**Jonathan R. Russell** (Oregon SBN 220641)
Jonnyrussell.law@outlook.com
LAW OFFICES OF JONNY RUSSELL, L.L.C.
500 SW 116 Ave., Flr. 4
Portland, OR 97225
Attorney for Plaintiff

**Pamela M. Keith** [DC Bar No, 448421] (*pro hac vice* application forthcoming)
pamkeith@centerforemploymentjustice.com
**Raymond K. Gordineer** [DC Bar No. 90028057] (*pro hac vice* application forthcoming)
raygordineer@centerforemploymentjustice.com
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW, Suite 600
Washington D.C. 20001
Tel: (202) 800-0292
Attorney for Plaintiff

## IN THE FEDERAL DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| BRIAN SHIRAI | ) | PLAINTIFF'S COMPLAINT FOR DAMAGES |
| | ) | |
| | ) | |
| | ) | 1. Violation of the False Claims Act, 31 U.S.C. §3730(h)—Whistleblower Retaliation |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | 2. Violation of ORS 659A.199— Whistleblower Retaliation) |
| | ) | |
| NIOBIUM MICROSYSTEMS, INC., | ) | |
| | ) | |
| | ) JURY TRIAL DEMANDED | |
| *Defendant.* | ) | |
| | ) | |

## COMPLAINT

Comes now Plaintiff, Brian Shirai (hereinafter "Plaintiff"), by and through undersigned counsel, with his Complaint against Defendant Niobium Microsystems, Inc. (hereinafter "Defendant" or "Niobium") and states as follows:

1

## PARTIES

1. Plaintiff is an individual residing in the State of Oregon. Plaintiff was employed by Defendant from approximately December 18, 2023 through August 27, 2025.

2. Defendant Niobium Microsystems, Inc. is a corporation organized under the laws of the State of Ohio, with its principal place of business in Dayton, Ohio. Defendant conducts business in the State of Oregon, including maintaining an office in Portland, Oregon, and at all relevant times employed Plaintiff.

3. At all relevant times, Defendant was a contractor and/or recipient of federal funds and was subject to applicable federal laws and regulations governing federal contractors.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, including the False Claims Act.

5. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a), because that claim forms part of the same case or controversy as Plaintiff's federal claim.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including in Multnomah County, Oregon, where Plaintiff was employed and where the conduct at issue took place.

## RELEVANT FACTS

7. Plaintiff holds a Bachelor of Science degree in Mathematics from Portland State University earned in 2009.

8.  Plaintiff is an experienced software engineer with approximately 30 years of experience designing, developing, and architecting complex software systems across a range of commercial applications.

9.  Plaintiff's experience includes work in areas such as geographic information systems (GIS), web application development, virtual machines and compilers, and encryption technologies, including fully homomorphic encryption ("FHE").

10.  Plaintiff has served both as an individual contributor and in leadership roles, including managing engineering teams.

### I.    PLAINTIFF'S ROLE AT NIOBIUM

11.  Plaintiff was hired by Defendant as a compiler engineer in December 2023. At that time, Defendant had limited internal software engineering resources, and Plaintiff was brought on to play a central role in developing the company's software systems.

12.  Plaintiff worked on a federally funded project involving fully homomorphic encryption ("FHE") technology, including development of software used in conjunction with a specialized hardware device (the "FHE Accelerator").

13.  The Plaintiff played a central role in the development of the FHE software systems, including designing and implementing the FHE compiler, a critical component necessary for the operation of the FHE Accelerator.

14.  Plaintiff also managed software personnel, coordinated work with contractors, and was heavily involved in recruiting and hiring engineering staff for the project.

15.  In total, Plaintiff was responsible for hiring a substantial portion of the software engineering team supporting the FHE project.

16. Plaintiff regularly reported on the development, performance, and functionality of the FHE systems to Defendant's executive leadership, including through weekly program meetings.

17. At the time of Plaintiff's employment, the FHE compiler he developed was the only functional compiler available for the project.

## II. PLAINTIFF'S INITIAL INVOLVEMENT WITH THE COMPILER PROJECT

18. Shortly after beginning his employment, Plaintiff met with Defendant's Chief Technology Officer to review the status of the FHE project, including the existing software components and the FHE Accelerator hardware.

19. From these initial discussions, Plaintiff understood that the existing compiler component was not functioning properly and that significant additional work was required to produce a usable system.

20. Plaintiff promptly met with other engineers working on the project to assess its status and identify outstanding issues. Based on this information, Plaintiff developed a plan to design and implement software necessary to test and operate the FHE Accelerator.

21. The FHE project was subject to performance expectations and benchmarks tied to its federal funding, requiring Defendant to demonstrate that the system met specified capabilities.

22. In early 2024, Plaintiff worked with Defendant's leadership and engineering team to develop a comprehensive plan for the software components, including the FHE compiler, with the goal of achieving functional capability in advance of anticipated hardware delivery.

23. During this time, Plaintiff began to question whether the FHE Accelerator would perform as represented. In particular, Plaintiff sought clarification from the hardware design team regarding how the device would achieve the promised performance improvements over existing technology, but did not receive clear or substantiated explanations.

24. As Plaintiff continued his work on the project, he identified additional concerns regarding incomplete development, gaps in the underlying design assumptions, and the absence of reliable methods to validate whether the system would perform as expected.

25. Plaintiff raised these concerns in ongoing discussions with colleagues and individuals involved in the project, including those with oversight of the federally funded work.

### III. DEFENDANT'S REPRESENTATIONS REGARDING THE FHE ACCELERATOR

26. During 2024, Defendant actively promoted the performance capabilities of the FHE Accelerator to potential commercial partners and customers, including large financial institutions.

27. Defendant represented that the FHE Accelerator would achieve significant performance improvements over existing technologies, including graphics processing units ("GPUs").

28. Plaintiff became aware that potential customers questioned these performance claims and requested additional documentation and substantiation.

29. In response, Defendant undertook efforts to justify its performance representations, including preparation of technical materials comparing the FHE Accelerator to existing technologies. Plaintiff was asked to assist with these efforts and provided technical input regarding the system's software and performance characteristics.

30. At the same time, Plaintiff continued to evaluate the system's capabilities and to develop tools and software for testing and benchmarking the FHE Accelerator.

31. Through this work, Plaintiff gained direct knowledge of the system's actual performance and limitations.

32. Plaintiff also participated in interactions with third parties, including industry experts and technology partners, relating to benchmarking and evaluation of the FHE Accelerator's performance.

33. As Defendant continued to promote the FHE Accelerator's capabilities, Plaintiff raised questions internally regarding whether the system could achieve the represented performance levels and whether those representations were adequately supported.

34. Despite these concerns, Defendant continued to pursue commercial relationships and promote the FHE Accelerator's capabilities to external parties.

## IV.  PLAINTIFF'S PROTECTED DISCLOSURES REGARDING THE FHE ACCELARATOR

35. In August 2025, Plaintiff attended an industry conference where he spoke with third parties knowledgeable about FHE technology and performance.

36. Through these discussions, and based on his own work on the project, Plaintiff concluded that Defendant's representations regarding the FHE Accelerator's performance were not supported and could not be achieved as claimed.

37. Plaintiff further understood that Defendant continued to promote these performance capabilities to potential customers and stakeholders, including in connection with a federally funded project.

6

38. On or about August 25, 2025, Plaintiff contacted Defendant's executive leadership to raise urgent concerns regarding the FHE Accelerator's performance and the accuracy of Defendant's representations.

39. Plaintiff promptly met with Defendant's senior leadership and explained that, in his professional judgment, the FHE Accelerator did not perform as represented and would not achieve the advertised performance levels.

40. Plaintiff further reported that continuing to market or represent the FHE Accelerator as meeting those performance levels would be misleading, including in connection with federally funded work.

41. Plaintiff also explained that the system's limitations could not be resolved within the existing engineering framework and that the product would not perform as promised.

42. On or about August 26, 2025, Plaintiff met with additional members of Defendant's executive leadership and reiterated these concerns in detail.

43. During these communications, Plaintiff clearly and unequivocally informed Defendant's leadership that the FHE Accelerator did not function as represented and should not be marketed or presented as meeting those performance capabilities, particularly in connection with federally funded programs.

## V.    PLAINTIFF'S TERMINATION

44. On the afternoon of August 26, 2025, shortly after Plaintiff reported his concerns to Defendant's executive leadership, Plaintiff was scheduled to meet with Defendant's Chief Executive Officer the following morning.

45. On August 27, 2025, Plaintiff attended the meeting with Defendant's Chief Executive Officer and a representative from Human Resources.

46. At the outset of the meeting, Plaintiff was informed that his employment was terminated effective immediately.

47. Defendant stated that Plaintiff was being terminated for being "disruptive."

48. Prior to his termination, Plaintiff had not received any warnings, discipline, or negative performance evaluations.

49. Plaintiff had not been placed on a performance improvement plan and had not been informed that his performance was deficient in any respect.

50. Plaintiff's termination occurred immediately after he reported concerns regarding Defendant's representations about the FHE Accelerator, including in connection with federally funded work.

51. Plaintiff was terminated because of his protected disclosures.

## VI.    PLAINTIFF IS TERMINATED FOR WHISTLEBLOWER ACTIVITY

52. In the afternoon of Tuesday, August 26, 2025, after the meeting with the executive team, Plaintiff received a calendar invite for an online meeting to speak with Mr. Yoder at 7am the next day.

53. On or about Wednesday, August 27, 2025, plaintiff joined the meeting.  Mr. Yoder and Ms. Porter from Human Resources were already on the call.

54. Plaintiff attempted to greet them, but Mr. Yoder immediately cut Plaintiff off and stated that Plaintiff was being disruptive and was being fired, effective immediately.

55. Plaintiff was shocked and caught completely off-guard, because up until that point, Plaintiff had not received any negative feedback, criticisms or complaints about his work performance.

56.    Plaintiff had never been placed on any kind of performance improvement plan, and had not received any indication that he was not fully successful in his role at Niobium.

57.    Plaintiff did not get an opportunity to defend himself or discover what specifically he had done to merit termination.  At no point in his employment was he ever warned that his performance was unsatisfactory or problematic.

58.    Plaintiff alleges that the only reason he was terminated is because of his meeting with the executive management team in which he reported unequivocally that the FHE accelerator did not work as promised, and that public representations about its utility were deceptive and inaccurate.

## CLAIMS FOR RELIEF

### COUNT I

*(Violation of the False Claims Act, 31 U.S.C. §3730(h)—*
*Whistleblower Retaliation)*

59.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

60.    At all relevant times, Defendant was a contractor and/or recipient of federal funds in connection with a project funded, in whole or in part, by the United States government through the Defense Advanced Research Projects Agency ("DARPA").

61.    Defendant's receipt of federal funds was contingent upon representations regarding the performance, development, and capabilities of the FHE Accelerator and related deliverables.

62.    During his employment, Plaintiff acquired knowledge of the development, testing, and performance of the FHE Accelerator and related systems.

9

63. Based on this knowledge, Plaintiff reasonably believed that Defendant was making, or would make, false or misleading representations regarding the FHE Accelerator's performance in connection with federally funded work, including representations material to the receipt of federal funds.

64. Plaintiff engaged in protected activity under the False Claims Act by taking actions to stop and oppose conduct that he reasonably believed constituted fraud on the United States, including reporting his concerns to Defendant's executive leadership.

65. On or about August 25–26, 2025, Plaintiff reported to Defendant's senior leadership that the FHE Accelerator did not perform as represented and that continuing to promote or represent its capabilities in connection with federally funded work would be misleading.

66. Plaintiff's disclosures were made in furtherance of efforts to stop violations of the False Claims Act and to prevent Defendant from making false or misleading claims to the United States.

67. Defendant was aware of Plaintiff's protected activity, including his reports to executive leadership concerning misleading representations tied to federally funded work.

68. On August 27, 2025—immediately following Plaintiff's protected activity—Defendant terminated Plaintiff's employment.

69. Plaintiff's protected activity was a motivating and substantial factor in Defendant's decision to terminate his employment.

70. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages, including lost wages and benefits, emotional distress, and reputational harm.

71. Pursuant to 31 U.S.C. § 3730(h), Plaintiff is entitled to all relief necessary to make him whole, including reinstatement or front pay, double back pay, compensatory damages, and attorneys' fees and costs.

72. Plaintiff also seeks all other relief available under law or equity.

## COUNT 2

### *(Violation of ORS 659A.199)—*
### *Whistleblower Retaliation)*

73. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74. At all relevant times, Plaintiff was an employee of Defendant within the meaning of ORS 659A.199.

75. Defendant is an employer within the meaning of ORS 659A.199.

76. During his employment, Plaintiff reported information to Defendant's management and executive leadership that he believed, in good faith, was evidence of violations of federal law, including misleading representations concerning the performance and capabilities of a federally funded project.

77. Plaintiff's reports were based on his direct knowledge of the development, testing, and performance of the FHE Accelerator and related systems.

78. Plaintiff had an objectively reasonable basis for believing that Defendant's representations regarding the FHE Accelerator were inaccurate or misleading, including in connection with federally funded work.

79. Plaintiff's reports constituted protected activity under ORS 659A.199.

11

80.    Defendant subjected Plaintiff to an adverse employment action by terminating his employment.

81.    Plaintiff's protected activity was a substantial factor in Defendant's decision to terminate his employment.

82.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including lost wages and benefits, emotional distress, and reputational harm.

83.    Plaintiff is entitled to all available remedies under ORS Chapter 659A, including compensatory damages, equitable relief, and attorneys' fees and costs.

84.    Defendant's actions as alleged herein were malicious, intentional, willful and taken in reckless disregard of Plaintiff's statutory rights.  Such conduct exceeds the bound of social toleration and demonstrates a reckless and conscious indifference to a highly unreasonable risk of harm and is of the type that punitive damages are intended to deter. Punitive damages should be assessed against Defendant in an amount to be determined by the jury based upon the evidence at trial.

85.    Plaintiff also seeks all other relief available at law or in equity.

## JURY TRIAL DEMAND

86. Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted,

/s/*Jonny Russell*
Jonathan R. Russell [ Oregon State Bar No. 220641]
LAW OFFICES OF JONNY RUSSELL LLC
500 SW 116 Ave., Flr. 4
Portland, OR 97225
(971) 284-1050

jonnyrussell.law@outlook.com
*Counsel for Plaintiff*


Pamela M. Keith [DC Bar No, 448421] (*Pro Hac Vice* Pending)
Raymond K. Gordineer [DC Bar No. 90028057] (*Pro Hac Vice* Pending)
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
(202) 800-0292
pamkeith@centerforemploymentjustice.com
rgordineer@centerforemploymentjustice.com
*Counsel for Plaintiff*

13